UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
DEBORAH L. BOARDMAN
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7810
Fax: (410) 962-2577
MDD_DLBChambers@mdd.uscourts.gov

March 24, 2020

LETTER TO COUNSEL

RE: *Thomas F. v. Commissioner, Social Security Administration*
Civil No. DLB-19-820

Dear Counsel:

On March 18, 2019, Plaintiff Thomas F. petitioned this Court to review the Social Security Administration's ("SSA's") final decision to terminate his Supplemental Security Income ("SSI") benefits. ECF No. 1. I have considered the parties' cross-motions for summary judgment. ECF No. 11 ("Pl.'s Mot."), ECF No. 12 ("Def.'s Mot."). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). This Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will deny both motions, reverse the judgment of the SSA, and remand the case to the SSA for further analysis pursuant to sentence four of 42 U.S.C. § 405(g). This letter explains my rationale.

Plaintiff was found disabled and entitled to SSI benefits on November 20, 2008. Tr. 19. On July 7, 2016, the Commissioner determined that Plaintiff was no longer disabled as of July 1, 2016. Tr. 19, 83-85. Plaintiff sought reconsideration, but the adverse determination was upheld by a Disability Hearing Officer. Tr. 92-98. After a hearing on September 6, 2018, Tr. 42-67, an Administrative Law Judge ("ALJ") issued an opinion on October 12, 2018, affirming the determination that Plaintiff's disability had ended as of July 1, 2016, and finding that Plaintiff had not become disabled again since that date, Tr. 19-32. The Appeals Council denied review, making the ALJ's decision the final, reviewable decision of the Agency. Tr. 1-7.

The ALJ evaluated Plaintiff's claim using the sequential process for determining whether a disability has ended as set forth in 20 C.F.R. § 416.994.[1] The ALJ determined that the "comparison

---

[1] An ALJ follows an eight-step sequential analysis to review the SSA's determination that a claimant is no longer disabled. *See* 20 C.F.R. § 416.994(b)(5). At step one, the ALJ determines whether the claimant has an impairment, or a combination of impairments, that meets or medically equals the criteria of a listed impairment. § 416.994(b)(5)(i). At step two, the ALJ determines whether medical improvement has occurred, § 416.994(b)(5)(ii), and, at step three, whether the medical improvement is related to the claimant's ability to work, § 416.994(b)(5)(iii). At step four, the ALJ will determine whether an exception to medical improvement applies in those cases where the ALJ did not find a medical improvement or found that the medical improvement was not related to the claimant's ability to work. § 416.994(b)(5)(iv). At step five, the ALJ determines whether the claimant's impairments are severe. § 416.994(b)(5)(v). At step six, the ALJ assesses

point decision" ("CPD") was the decision finding Plaintiff disabled on November 20, 2008. Tr. 20-21. He was found disabled because he suffered from "attention-deficit hyperactivity disorder ('ADHD') and cognitive disorder, affective disorder, anxiety related disorder, and substance abuse disorder." *Id.* The ALJ concluded that Plaintiff's condition after July 1, 2016 did not meet the listings within section 12.02 (neurocognitive disorders). Tr. 23-26. The ALJ found that, although Plaintiff continued to suffer from the same impairments through the date of the ALJ's opinion, medical improvement had occurred as of July 1, 2016. Tr. 26. In finding medical improvement, the ALJ relied on Plaintiff's "normal mental status exams and normal daily activities with little-to-no mental health treatment required." *Id.* Even though Plaintiff continued to have the same impairments that qualified him for disability benefits in 2008, the ALJ determined that, as a result of medical improvement as of July 1, 2016, Plaintiff retained the residual functional capacity ("RFC") after that date to:

> perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant cannot work with public [sic]; he can have occasional contact with supervisors and co-workers. The claimant requires a low stress environment with occasional decision-making and occasional changes in the work setting. He requires reminders of tasks 2 time [sic] per day and cannot have any written instructions.

Tr. 27. After considering the testimony of a vocational expert ("VE"), the ALJ determined that Plaintiff could perform several jobs existing in significant numbers in the national economy and that, therefore, he was not disabled. Tr. 31.

Plaintiff raises five arguments on appeal: (1) the ALJ erroneously adjudicated Plaintiff's claim under the current listings; (2) the ALJ ran afoul of *Mascio v. Colvin*, 780 F.3d 632, 638 (4th Cir. 2015); (3) the ALJ erroneously relied on Plaintiff's lack of treatment to support a finding of medical improvement; (4) the ALJ improperly included social media in the record; and (5) the submission of the January 20, 2016 consultative examination report was delayed. Pl.'s Mot. 5-8. I agree that the ALJ's analysis did not comply with *Mascio* and that the ALJ's reliance on Plaintiff's lack of treatment was erroneous. I therefore remand the case under sentence four.

<u>The ALJ evaluated Plaintiff's claim under the incorrect listings.</u>

First, Plaintiff is correct that the ALJ erred by adjudicating his claim under the current listings. Pl.'s Mot. 5-6. At step one of the sequential evaluation for determining whether a claimant's disability continues, the ALJ determines whether a claimant's impairments meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. When determining whether a claimant's impairment continues to meet a listing, SSA regulations direct an ALJ to consider the impairment(s) under "the same Listing used to make [the most recent favorable] determination or

---

the claimant's RFC, and whether the claimant can perform past relevant work. § 416.994(b)(5)(vi). The analysis concludes at step seven where the ALJ determines whether other work exists that the claimant can perform given his or her age, education, past work experience, and RFC. § 416.994(b)(5)(vii). In certain cases, step eight allows the ALJ to proceed to step seven without making a finding under step six. § 416.994(b)(5)(viii).

decision as it was written at that time, even if it has since been revised or removed from the Listings of Impairments." 20 C.F.R. § 416.994a(b)(2). Therefore, the ALJ should have evaluated Plaintiff's impairments under the criteria of listing 12.02 as it existed in 2008. *See* Tr. 20 (noting Plaintiff's CPD was dated November 20, 2008). However, the ALJ evaluated Plaintiff's impairment under the subsequently revised mental impairment listings. Tr. 24; *see* Revised Medical Criteria for Evaluating Mental Disorders, 81 FR 66138-01, 2016 WL 5341732 (Sept. 26, 2016) (explaining the revised rules became effective January 17, 2017). While the revisions to the mental impairment listings were substantial in some respects, the contested "B criteria" category of "concentration, persistence, or pace" remained mostly unchanged. *Compare* 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 12.00(E)(3) (2017), *with* 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 12.00(C)(3) (2008). Because of the similarity between the versions, the Court is able to review the ALJ's discussion of Plaintiff's limitations in the area of concentration, persistence, or pace, and evaluate the decision under the Fourth Circuit's mandates in *Mascio*. On remand, the ALJ should follow the requirements of 20 C.F.R. § 416.994a(b)(2) and evaluate Plaintiff's claim under the version of the listing present when he last received a favorable decision.

The ALJ's decision runs afoul of *Mascio*.

Next, Plaintiff argues that the ALJ's decision does not comply with the Fourth Circuit's holding in *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015). I agree. In *Mascio*, the Fourth Circuit determined that remand was appropriate for three distinct reasons, including, as pertinent to this case, the inadequacy of the ALJ's evaluation of Plaintiff's "moderate difficulties" in concentration, persistence, or pace. 780 F.3d at 638. The mental impairment listings include: (1) "paragraph A criteria," which consist of a set of medical findings; (2) "paragraph B criteria," which consist of a set of impairment-related functional limitations; and (3) "paragraph C criteria," which relate to "serious and persistent" disorders lasting at least two years with a history of ongoing medical treatment and marginal adjustment. 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 12.00(A), (G) (2017). A claimant's impairments meet the listings relevant to this case by satisfying either the paragraph A and paragraph B criteria, or the paragraph A and paragraph C criteria. *Id.* § 12.00(A).

Paragraph B consists of four broad functional areas assessing the ability to: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself.[2] *Id.* § 12.00(A)(2)(b). The functional area of concentration, persistence, or pace "refers to the abilit[y] to focus attention on work activities and stay on task at a sustained rate."[3] *Id.* § 12.00(E)(3).

---

[2] The broad functional areas in the previous Paragraph B were (1) restrictions on activities of daily living; (2) difficulties maintaining social functioning; (3) difficulties in maintaining concentration, persistence, and pace; and (4) repeated episodes of decompensation. 20 C.F.R. § 404.1520a (2016).

[3] The previous version defined this functional area as "refer[ring] to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 12.00(C)(3) (2008).

The ALJ employs the "special technique" to rate a claimant's degree of limitation in each area, based on the extent to which the claimant's impairment "interferes with [the claimant's] ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. § 416.920a(b), (c)(2) (2017). The ALJ uses a five-point scale to rate a claimant's degree of limitation in the four areas: none, mild, moderate, marked, or extreme. *Id.* § 416.920a(c)(4). Under the revised listings, a moderate limitation signifies that the claimant has only a fair ability to function in the relevant area of mental functioning. 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 12.00(F)(2)(c) (2017). The listings previously specified that the SSA "[did] not define 'marked' by a specific number of tasks that [a claimant is] unable to complete," and provided little guidance on the meaning of a "moderate" limitation. 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 12.00(C)(3) (2008).

In *Mascio*, the Fourth Circuit remanded the case because the hypothetical the ALJ posed to the VE—and the corresponding RFC assessment—did not include any mental limitations other than unskilled work, despite the fact that, at step three of the sequential evaluation, the ALJ determined that the claimant had moderate difficulties in maintaining concentration, persistence, or pace. 780 F.3d at 637-38. The Fourth Circuit specifically held that it "agree[s] with other circuits that an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work." *Id.* at 638 (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)) (internal quotation marks omitted). In so holding, the Fourth Circuit emphasized the distinction between the ability to perform simple tasks and the ability to stay on task, stating that "[o]nly the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id.* Although the Fourth Circuit noted that the ALJ's error might have been cured by an explanation as to why the claimant's moderate difficulties in concentration, persistence, or pace did not translate into a limitation in the claimant's RFC, it held that absent such an explanation, remand was necessary. *Id.*

Here, the ALJ found that Plaintiff had moderate limitations maintaining concentration, persistence, or pace. Tr. 25. The ALJ's analysis stated:

> With regard to concentrating, persisting, or maintaining pace, the claimant has moderate limitation. I adopt the same explanation as was stated for understanding and remembering. In addition, I note that his October 2017 hospital admission showed he had normal concentration.

*Id.* (internal citations omitted). The ALJ's explanation of Plaintiff's ability to understand, remember, or apply information stated:

> In understanding, remembering, or applying information, the claimant has moderate limitation. The claimant completed 12th grade but reported he only obtained a certificate, not a diploma, and was in special education ("ed") classes. He testified he cannot read well and gets his mother's help to fill out forms. However, his mother testified he has been on the waiting list at [Department of Rehabilitative Services] for years, suggesting he has the ability to work but just needs guidance and training.

> Although consultative examiners Dr. Hertzell and Dr. Anderson found the claimant had significant cognitive deficits based on testing, Dr. Hertzell's scores were invalid because the claimant was malingering. Dr. Anderson's scores are unsupported elsewhere in the record and are inconsistent with the other evidence regarding his daily functioning including his function reports and his October 2017 hospital records showing his admission to working as a barber.[4] His [Advanced Behavioral Health] treatment records show relatively normal mental function including thought process and content. His mother's function report indicates he can count change and follow oral directions. Considering the evidence, I find he has moderate limits in this area and have adapted mental limitations accordingly.

*Id.* at 24-25 (internal citations removed).

Although the ALJ stated that "[t]he evidence of record shows [Plaintiff] has moderate limitations in his understanding, remembering and applying information and his concentration, persistence and pace," Tr. 28, the ALJ never discussed Plaintiff's ability to concentrate, persist, or maintain pace throughout an eight-hour workday beyond noting, at step one, that a hospital admission report showed "normal concentration."[5] Tr. 25. In the RFC discussion, the ALJ again grouped together the two functional areas and referred to them as the "cognitive areas." Tr. 29.

The ALJ cited to records corroborating some impairment in Plaintiff's ability to concentrate, persist, and maintain pace. *See, e.g.*, Tr. 314 (Plaintiff's mother stating that she "[does] not allow him to use the stove to cook" because she "[does not] want [her] apt. [to] burn down."); Tr. 332 (Plaintiff's mother stating that she "didn't allow him to cook at [her] home due to his attention span"); Tr. 575 (psychological evaluation showing a marked limitation in the ability to concentrate, persist, and maintain pace, including the abilities to work at an appropriate and consistent pace, ignore distractions while working, and work a full day without more than normal breaks); Tr. 578 (mental assessment showing a moderate limitation in the ability to complete tasks timely); Tr. 639 (mental assessment showing that Plaintiff had a moderate limitation in the ability to "understand[], remember[], and carr[y] out simple job instructions," and noting that he "has trouble concentrating").

---

[4] Dr. Hartzell, to whom the ALJ gave "more" weight, Tr. 30, noted that Plaintiff "did janitorial work in a barber shop, 'Swept and cleaned up,'" Tr. 493. Although the ALJ cites to Plaintiff's "admission" that he worked as a barber multiple times in the decision, *see* Tr. 23-25, the decision lacks any discussion regarding whether Plaintiff worked as a barber or performed janitorial services in a barber shop, and, if he did either job, how he performed the job, how many hours a day or week he worked there, and for how long he held the job. At the hearing, Plaintiff testified that he had worked as a dishwasher when he was a teenager but had not had a job in the last fifteen years. Tr. 50. The ALJ found that Plaintiff had no past relevant work. Tr. 30.

[5] Plaintiff received emergency room treatment for injuries sustained after "[t]he claimant's mother called the police for the claimant's aggressive behavior" and suicidal ideation. Tr. 23; *see* Tr. 581. The ALJ noted that "[Plaintiff] was diagnosed with aggressive behavior and a contusion in his ribs from being hit by the police." Tr. 23.

Regarding the inclusion of specific RFC limitations, the ALJ explained that she restricted Plaintiff "to work with no written instructions, occasional changes and decision-making, and reminders of tasks twice per day, and a low stress environment" to accommodate his "moderate limitations in understanding and applying information and in concentration and persistence." Tr. 29. Because the ALJ did not adequately assess Plaintiff's ability to concentrate, persist, or maintain pace, the Court cannot review whether these RFC limitations address Plaintiff's difficulties in that functional area. In any event, the ALJ stated that those same RFC limitations – "restriction to a low stress environment with occasional decision-making and occasional changes in the work setting, reminders of tasks 2 time[s] per day and no written instructions" – accommodated "[Plaintiff's] specific reading issue and inability to handle complex instructions." *Id.* The ALJ further added that the limitation to a low stress environment was specifically included in response to his therapist Jennifer Chen's indication that Plaintiff "has marked limits in dealing with work stress." *Id. Mascio* requires that, in the absence of an RFC limitation to accommodate a claimant's moderate difficulties maintaining concentration, persistence, or pace, the ALJ is required to explain why no such limitation is required. 780 F.3d at 638. The ALJ has not provided such an explanation here.

The Commissioner argues that the ALJ appropriately accounted for Plaintiff's moderate limitations in concentration, persistence, or pace by limiting Plaintiff to "a low stress environment and [including] reminders of tasks twice per day," and that "when read as a whole, [the ALJ's decision] clearly reflects a proper analysis." Def.'s Mot. 7. This is not persuasive. When read as a whole, the ALJ's decision shows that she failed to evaluate Plaintiff's ability to concentrate, persist, or maintain pace. Therefore, the RFC's limitations to a low-stress environment and twice-daily reminders do not cure the *Mascio* defect. The ALJ's failure to evaluate Plaintiff's limitations in concentration, persistence, and pace is especially troubling here because Plaintiff was found to have met listing 12.02 in 2008 because of marked limitations in two functional areas: social functioning and concentration, persistence, or pace. *See* Tr. 485. There does not appear to be record evidence of improvement in those areas.

Therefore, the Court cannot review the ALJ's finding regarding Plaintiff's ability to concentrate, persist, or maintain pace, or whether the ALJ's RFC assessment would permit a person with Plaintiff's limitations to sustain a competitive pace with only normal breaks. In light of this inadequacy, I must remand the case to the SSA for further analysis.

<u>The ALJ erroneously relied on Plaintiff's lack of treatment to support a finding of medical improvement.</u>

Plaintiff also challenges the ALJ's determination that he experienced medical improvement. Pl.'s Mot. 7-8. As Plaintiff correctly points out, the Commissioner carries the burden of proof in termination cases. *Id.* at 7 (citing 42 U.S.C. § 423(f) and 20 C.F.R. § 416.994(b)). Plaintiff argues that the ALJ erred by relying on the lack of medical treatment in the record. *Id.* I agree.

Regarding medical improvement, the ALJ wrote:

> The medical evidence supports a finding that, by July 1, 2016, there had been a decrease in medical severity of the impairments. As discussed above, as of July 2016, there is medical improvement based on the evidence of record since that date, which shows normal mental status exams and normal daily activities with little-to-no mental health treatment required.

Tr. 26.

In response, the Commissioner contends that the ALJ's reliance on Plaintiff's lack of treatment "was but one factor in a much larger analysis," and that "[Plaintiff's] arguments amount to nothing more than a request for this Court to reweigh the evidence." Def.'s Mot. 10. The Commissioner is correct that a court may not reweigh evidence and that "the Commissioner considers all relevant factors which relate to [a claimant's] subjective complaints, including the nature and extent of the claimant's treatment." *Id.* at 10. However, the Commissioner did not acknowledge 42 U.S.C. § 423(f) or reference the framework for determining medical improvement under 20 C.F.R. § 416.994(b).

While there is no presumption of continuing disability,[6] a decision to terminate benefits "must be based on substantial evidence of medical improvement." *Rhoten v. Bowen*, 854 F.2d 667, 669 (4th Cir. 1988). Medical improvement is defined as "any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled." 20 C.F.R. § 416.994(b)(1). Such a determination "must be based on changes (improvements) in the symptoms, signs, or laboratory findings associated with your impairment(s)." *Id.*; *see also* § 416.994(b)(7) (explaining that the SSA "will compare the current medical severity of th[e] impairment(s) . . . to the medical severity of th[e] impairment(s) at th[e] time" of the most recent favorable decision), § 416.994(c)(1) (medical improvement "is determined by a comparison of prior and current medical evidence which must show that there have been changes (improvement) in the symptoms, signs or laboratory findings associated with that impairment(s)."). The comparison of the records is essential "for a reasoned assessment of whether there is substantial evidence to support" a finding of improvement. *Veino v. Barnhart*, 312 F.3d 578, 587 (2nd Cir. 2002); *see also Hagans v. Comm'r of Soc. Sec.*, 694 F.3d 287, 308 (3d Cir. 2012) (explaining the "burden-shifting scheme" in Social Security termination cases, where the SSA carries the burden of showing "sufficient improvement" where a claimant has "introduce[d] [ ] evidence that his or her condition remains essentially the same as it was at the time of the earlier determination.") (quotations and citations removed).

Here, the ALJ's stated reasons for finding medical improvement – normal mental status exams, normal daily activities, and little-to-no mental health treatment – were present in the record in 2008, which the ALJ summarized:

> The evidence supporting his equaling the listing for an organic mental disorder included the August 2008 records from his primary care physicians at Jai Medical

---

[6] *See* 42 U.S.C. § 423(f) ("Any determination made under this section shall be made . . . without any initial inference as to the presence or absence of disability being drawn from the fact that the individual has previously been determined to be disabled.").

        ("Jai"), which showed the claimant presented for depression after a two-year lapse in treatment. He had a history of drug use and suicidal thoughts. His psychological consultative examination with Shabse Kurland, Ph.D. in October 2008 showed a Full Scale IQ score of 62 with observed anxiety and paranoia. He was diagnosed with social phobia, cannabis use, and mild mental retardation. Based on that evidence, he was found by P. Sokas, Ph.D. at the State level to equal 12.02A(2), (3), (6) and B(2), (3) for his organic mental disorder.

Tr. 21. (internal citations removed). The ALJ concluded that "the evidence shows he went from equaling a mental listing based on his 2008 Jai medical records and the consultative exam report of Dr. Kurland, to normal mental status exams in 2017 and little to no treatment since then." Tr. 26. As Plaintiff points out, his 2008 records exhibit less treatment than his 2016 record. Pl.'s Mot. 8; *see* Tr. 460-65 (Jai clinic notes); 466-73 (Dr. Kurland's consultative examination report). Mental status information from Jai indicated "depression." *See* Tr. 464. His daily activities included watching television and movies and playing basketball.[7] Tr. 471. Additionally, the 2008 exhibits note little-to-no medical treatment for his mental health, including that Plaintiff was "taking no medications." Tr. 472.

        The ALJ places great emphasis on Plaintiff's lack of medical treatment. *See* Tr. 21 ("he has not had much mental [ ] treatment and has never been on prescribed medications for his alleged symptoms"); *id.* ("[Plaintiff] confirmed that he had no history of treatment for a psychological impairment within the past two years and is not currently on medications, which is consistent with the lack of any objective medical notes in the record"); Tr. 22 ("There are no treatment notes between the June 2016 CDI and his next examination in October 2016."); Tr. 22-23 ("The only mental health

---

[7] The ALJ noted that Plaintiff's hobbies and interests included "watching television, usually cartoons and sports," "video games like Madden Football," and "interact[ing] with his daughter." Tr. 28. Plaintiff did not have a child in 2008. The ALJ found that Plaintiff's "admitted abilities," such as "caring for his young child," "belie his allegation of mental disability." Tr. 22, 24; *see also* Tr. 25 ("He cares for his young daughter and he lived out-of-state for a year to be closer to his daughter."); Tr. 28 ("He interacts with his daughter."). The record supports that Plaintiff has sometimes cared for his daughter. *See* Tr. 339 (Plaintiff's mother explaining "[Plaintiff] helps to take care of his daughter."). The record also supports that Plaintiff has never lived alone, and that someone (his mother, except for one year when he lived with his child's mother) cares for him and makes his food. *See, e.g.*, Tr. 331 (Plaintiff's mother stating that, in the morning, "he gets his daughter up and a family member prepares breakfast for the two of them."); Tr. 340 (Plaintiff's mother stating, when Plaintiff lived with his daughter's mother, "Sometimes Thomas fix[es] microwave foods or sandwiches for himself and daughter. His foods are prepared by girlfriend."). The ALJ cited to Dr. Hartzell's consultative examination report to note that "claimant admitted he cares for his three-year old daughter while her mother works. He feeds her, changes her, dresses her, and takes her outside." Tr. 21 (citing Exh. 5F). However, the CDI investigation, conducted during Plaintiff's one-year residency with his child and child's mother, showed that no witnesses had ever seen him alone with a child. Tr. 503-05. In her summary of the CDI report, the ALJ omitted any reference to Plaintiff's child, stating instead that he was able to "take care of himself independently when his girlfriend was at work." Tr. 30. Of course, inconsistencies in the evidence are for the Commissioner to rectify. 20 C.F.R. § 416.929(c)(4). In any event, an added hobby or interest is not evidence of changed "symptoms, signs, or laboratory findings." 20 C.F.R. § 416.994(b)(1).

treatment of record for the claimant began in July 2017 . . . his treatment stopped after July 2017. There are no other mental health treatment records."); Tr. 24 ("there is very little objective medical treatment evidence to support the claimant's allegation of continued mental impairment"); *id.* ("Most importantly, there is virtually no treatment records for any mental impairment."); Tr. 26 ("His testimony that he does not seek therapy anymore and does not take prescription medications shows that he is functional with minimal to no medical treatment."); Tr. 28 ("Moreover, he has never taken prescribed medications for any mental health symptoms."); Tr. 30 ("Moreover, there are no psychiatric or psychological treatment records to suggest the claimant's mental impairments were impeding his ability to function. Not until July 2017 did the claimant seek therapy and, as he has testified, he has since ceased that treatment, currently receiving no therapy and never having taken any prescribed medications.").

In this case, the lack of medical treatment is not evidence of medical improvement. *See Rice*, 86 F.3d at 2 ("Given [the plaintiff's] failure to seek treatment for a substantial period of time preceding the determination that he was disabled, his *continuing* failure to seek treatment is not evidence of *change* or *improvement* in his impairment.") (emphasis in original). As the ALJ noted, Plaintiff had little-to-no treatment prior to his disability determination in 2008 and at the time of reconsideration in 2016. The ALJ's reliance on Plaintiff's failure to seek treatment does not, therefore, show medical improvement.

Furthermore, the ALJ discredited all evidence of intellectual functioning to support a finding of medical improvement. In 2008, when Plaintiff was found disabled, he had an IQ of 62. Tr. 21. The ALJ discredited Dr. Anderson's consultative examination report showing an IQ score of 55 because "there is no corroborating evidence and the other evidence of record shows far greater ability to function." Tr. 24. The ALJ also found that the IQ score of 52 from Dr. Hartzell's consultative examination was "not reliable" because Dr. Hartzell thought Plaintiff was malingering. *Id.* However, even Dr. Hartzell concluded that "the claimant does function low intellectually, perhaps in the borderline range of intelligence optimally." Tr. 496. The ALJ certainly may discredit the evaluations of Plaintiff's intellectual functioning, but the fact that they have been discredited does not support a finding of medical improvement based on changed symptoms, signs, or laboratory findings.

In sum, the ALJ failed to perform the required comparison of Plaintiff's current and prior symptoms, signs, and laboratory findings under 20 C.F.R. § 416.994, and her finding of medical improvement is not supported by substantial evidence. For this additional reason, remand is warranted.

<u>The ALJ did not err by considering social media evidence, and the delayed report was not prejudicial.</u>

Plaintiff's two remaining arguments are less persuasive. First, Plaintiff argues that the ALJ improperly included social media evidence and an unsigned report in the record. Pl.'s Mot. 7. He contends that, under HALLEX 1-2-5-69B,[8] an "ALJ is precluded from utilizing social media to deny a

---

[8] HALLEX is the Social Security Administration's "Hearings, Appeals, and Litigation Law Manual." Section 1-2-5 addresses how the SSA obtains evidence. Subsection 69 is titled "Using the Internet as a Source of Information in Case Adjudication."

claim," and that the ALJ here admitted a report "conducted by an individual named Rollins, who is identified but did not sign the report." *Id.* Plaintiff cites to *Hooper v. Heckler*, 752 F.2d 83, 85 (4th Cir. 1985), for the contention that "[t]he Fourth Circuit has stated that unsigned reports cannot be admissible in non-adversarial SSA proceedings." *Id.* In *Hooper*, the Fourth Circuit questioned the SSA's inclusion of a report by a state medical consultant summarizing a phone conversation with a doctor when the report was not signed by the doctor. 752 F.2d at 85, 85 n.2 ("The unsigned report of [the doctor's] conversation was admitted into evidence without objection. We note, however, that the Secretary's practice of obtaining such evidence is of questionable propriety."). In response, the Commissioner argues that, while HALLEX 1-2-5-69 generally precludes an ALJ from relying on information from the internet, "adjudicators *will* consider information from the Internet or social media if this information has been corroborated by the CDIU [Cooperative Disability Investigations Unit] and associated with the record." Def.'s Mot. 8.

Here, the ALJ properly cited to the CDIU's report, which is included in the record, and to "[s]ocial media pictures of the claimant [that] show he engages in social settings with family members." Tr. 21-22. The CDIU's report was signed by a CDIU program specialist and a CDIU special agent/team leader. Tr. 506. Plaintiff identifies no authority mandating that an investigator sign a CDIU report. The Court finds no legal error.

Second, Plaintiff argues that Dr. Hartzler's consultative examination report was improperly delayed. Pl.'s Mot. 8. Dr. Hartzler's report was submitted thirty days after the examination. *See* Tr. 490 ("Date of Interview: 1/20/16"); Tr. 83 ("report received 02/19/2016"). Although it is Plaintiff's counsel's "understanding" that a consultative examiner's report should be submitted within fifteen days in the state of Maryland, Pl.'s Mot. 8, Plaintiff has not identified a statutory or regulatory deadline for the submission of reports. In any event, Plaintiff has not identified any resulting prejudice from the delay.

Lastly, there is one important fact that was not mentioned in the ALJ's decision or in the Commissioner's motion: the SSA banned Plaintiff from all SSA offices during the course of his termination case. The ALJ briefly discussed a failed consultative examination in October 2016 where "[Plaintiff] was aggressive and verbally hostile to Dr. Arnheim, causing Dr. Arnheim to terminate the exam." Tr. 22. In a conversation between Plaintiff's counsel and the ALJ about why Plaintiff was not allowed to attend his scheduled in-person oral hearing on February 6, 2018, the ALJ stated "[Plaintiff] was banned from all Social Security offices based on what occurred at the consultative examination." Tr. 71; *see also* Tr. 194 (Notice of Hearing dated May 29, 2018) ("I will conduct your hearing by telephone because I have found that you cannot appear in person, and video conferencing is not available."). Despite being banned from all SSA offices, the ALJ concluded that Plaintiff experienced medical improvement and could perform jobs such as vehicle cleaner, hand packager, and cleaner, even though "the VE testified that there were no jobs [Plaintiff] could perform if he were isolated." Pl.'s Mot. 4; *see* Tr. 64, 70. In the Court's view, the fact that Plaintiff was banned from entering SSA offices and from attending his own hearing due to his aggressive and verbally hostile behavior towards a medical professional should be considered by the ALJ on remand.

For the reasons set forth herein, Plaintiff's Motion for Summary Judgment, ECF No. 11 is DENIED, and Defendant's Motion for Summary Judgment, ECF No. 12, is DENIED. Pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is REVERSED IN PART due to inadequate analysis. The case is REMANDED for further proceedings in accordance with this opinion.

Despite the informal nature of this letter, it should be flagged as an opinion. A separate order follows.

Sincerely yours,

/s/

Deborah L. Boardman
United States Magistrate Judge